UNITED STATES of America, Appellee

v.

Claude Weldon TRUSLOW, a/k/a
"Gene", et al., Appellants.

Nos. 73–2309 to 73–2311.

United States Court of Appeals,
Fourth Circuit.

Argued Jan. 10, 1975.

Decided Dec. 3, 1975.

Michael A. Braun, Timothy N. Barber and George A. Daugherty, Charleston, W. Va. (court-appointed), for appellants.

John A. Field, III, U. S. Atty. (Robert B. King and Frank E. Jolliffe, Asst. U. S. Attys., on brief), for appellee.

Before HAYNSWORTH, Chief Judge, and BUTZNER and WIDENER, Circuit Judges.

WIDENER, Circuit Judge:

The appellants, Bernard Lee Brumfield, Claude Weldon Truslow, and George Thomas Davidson, Jr., were tried jointly and convicted by a jury of both counts of a two count indictment for (1) conspiracy to obstruct justice in violation of 18 U.S.C. § 371, and (2) obstruction of justice in violation of 18 U.S.C. § 1503. The charges stem from the shooting of Phillip J. Graziani, a government witness in the investigation of alleged criminal activity of C. Donald Robertson, former Attorney General of West Virginia.

## I

Among the issues presented in this appeal are: (1) Whether hearsay statements made by the defendants during the period following the termination of the conspiracy were improperly admitted into evidence at their joint trial in contravention of the holding of the Supreme Court in *Bruton v. United States*, 391 U.S. 123, 88 S.Ct. 1620, 20 L.Ed.2d 476 (1968), and (2) Whether there was reversible error by the trial court in not granting motions for severance made by Davidson and Brumfield.

We find prejudicial error on Issue (1) as to Truslow, and on Issue (2) as to Davidson and Brumfield and remand for a new trial.

Late in the night of April 8, 1972, or in the early morning hours of April 9, 1972, Phillip Graziani, a former Assistant Attorney General of the State of West Virginia, was shot twice in the head as he was about to enter his home in Charleston, West Virginia. Other than the assailant or assailants, there were no known eyewitnesses to the incident. Graziani testified at the trial that he had no recollection of the manner in which he was wounded nor of the identity of his assailant.

The government asserts that Graziani was shot in an effort to prevent his testifying in the pending criminal trial of C. Donald Robertson. Prior to the shooting, Graziani had testified before a federal grand jury that was conducting an investigation of Robertson. Graziani was to testify for the government in Robertson's pending criminal trial, which was scheduled to begin in federal court on May 16, 1972.

At trial, the government offered evidence of a conspiracy that included Brumfield, Truslow, and Davidson among its members and which had as its object the murder of Graziani.

■ The *Bruton* problem arises in this case from the use by the prosecution of statements made by the defendants after the termination of the conspiracy and which incriminate not only the declarant but also his co-defendants. Truslow and Brumfield testified at the trial, while Davidson did not.

The trial court found and instructed the jury that "the conspiracy, if you find such existed, terminated upon the shooting of Philip Graziani." This ruling was fully supported by the record.

At trial, one Carr, a witness for the United States, testified that on April 10, 1972, the Monday after the shooting, he had a conversation with Davidson in which Davidson stated that he had "done a job for Mr. Truslow," and that that job was the shooting of the Assistant Attorney General. Davidson was also quoted as stating that he received $3,000 for the commission of the crime. Carr further testified that Davidson was nervous and upset during their conversation because Graziani was still alive.[1]

This hearsay statement was properly admissible against the declarant, Davidson, a party defendant. But the statement was inadmissible against the declarant's co-defendant Truslow. *Krulewitch v. United States*, 336 U.S. 440, 442–43, 69 S.Ct. 716, 93 L.Ed. 790 (1948); *Lutwak v. United States*, 344 U.S. 604, 618, 73 S.Ct. 481, 97 L.Ed. 593 (1953).

1. Davidson's attorney cross-examined Carr with respect to these statements and, in the process, read to the court and jury portions of an FBI investigative report regarding Carr. The portion of the statement read included, "He (Carr) reaffirmed that Davidson told him he shot Graziani for Gene Truslow and that the others, Brumfield and Toney, accompanied him to the shooting scene." This conversation between Davidson and Carr is the same one brought out on direct examination by the government and which occurred on the Monday following the shooting.

As noted, the prejudicial statement of Carr that implicated Brumfield was brought out by Davidson's attorney on cross-examination and not by the government. It did, however, come from an FBI report, so the government must have known that the statement was there. While the source of the introduction into evidence should not render the statement admissible if objected to, it is noted to show, together with other statements recited in the body of the opinion, the extent of the *Bruton* problem apparent throughout this case.

The Supreme Court recently stated the applicable rule in *Anderson v. United States,* 417 U.S. 211, 218, 94 S.Ct. 2253, 2259, 41 L.Ed.2d 20 (1974):

"The doctrine that declarations of one conspirator may be used against another conspirator, if the declaration was made during the course of and in furtherance of the conspiracy charged, is a well recognized exception to the hearsay rule which would otherwise bar the introduction of such out-of-court declarations. The hearsay-conspiracy exception applies only to declarations made while the conspiracy charged was still in progress, a limitation that this Court has 'scrupulously observed.'" (Citations omitted)

The alleged conspiracy was held to have ended with the shooting of Graziani. Admissions made thereafter were admissible against the declarant, but not against the co-defendant. The trial court instructed the jury, in accord with *Delli Paoli v. United States,* 352 U.S. 232, 77 S.Ct. 294, 1 L.Ed.2d 278 (1957), that such post-conspiracy statements may be considered as evidence only against the person making the statement, unless made in the presence of one or more of the other defendants, in which case it may be considered against any of the defendants present when the statement was made. But *Delli Paoli* was expressly overruled by *Bruton.*

In *Bruton,* the Supreme Court held that because of the substantial risk that the jury, despite instructions to the contrary, may look to the incriminating extrajudicial statements in determining guilt of those other than the declarant, admission of such statements in a joint trial violates the right of cross-examination secured by the confrontation clause of the Sixth Amendment. 391 U.S. 123, 126, 88 S.Ct. 1620, 20 L.Ed.2d 476.

Such limiting instructions do not prevent or cure prejudice that results when statements that directly incriminate co-defendants are introduced into evidence at a joint trial and the declarant is not available to testify or to be cross-examined. *Bruton,* p. 129, 88 S.Ct. 162. "The vice of using a post-conspiracy statement that implicates another defendant lies in the denial of Sixth Amendment rights of confrontation and cross-examination when the author does not testify. Then severance is imperative." See *United States v. Harris,* 409 F.2d 77, 81 (4th Cir. 1969).

The statement attributed by Carr to Davidson falls squarely within the prohibition of *Bruton.* The statement directly links Truslow to the shooting and is highly incriminating. Davidson did not testify and could not have been questioned as to the statement. Admitting the statement was prejudicial error and requires a reversal of the conviction of Truslow.

■ A number of other statements made after the termination of the conspiracy and which were inadmissible hearsay as to co-defendants other than the declarant were presented to the jury at trial.

Among these was testimony of Mickey Vanater, a government witness, that Truslow had told him, "He put two bullets right in back of his head but even with Sticks with him he couldn't even kill him." "Sticks" is a nickname used by Brumfield, a fact known by the jury. Vanater said that there was no name used in connection with the "he" of the statement.

Prior to this statement, Vanater quoted Truslow as saying of Brumfield, "Boy, if he rats on me he will hang me." Vanater also stated that Truslow had made similar remarks in regard to Davidson.

Franklin Cox, another government witness, testified on direct examination as to a conversation with Brumfield: "I asked him if he had saw Davidson in town and he said Davidson had left town; he made some money and had left town. I asked him how and he said he knocked off a lawyer or tried to knock off a lawyer or something to that effect."

Cox also testified as to a post-shooting conversation with Truslow: "Well, I

asked him where Brumfield and Davidson was and he said he didn't care where they were, and I asked him why, and he said he paid them to do a job for him and they blew it." In response to a later question by the prosecution as to what kind of "job" it was, Cox replied, "Something to do with doing away with a snitching lawyer."

Were it not that Brumfield and Truslow later testified, these statements would also require reversal under *Bruton*. However, since Brumfield and Truslow did testify, denied making the out of court statements, and proceeded to testify favorably to the other defendants concerning the underlying facts, the co-defendants were denied no right of confrontation. *Nelson v. O'Neil*, 402 U.S. 622, 629–30, 91 S.Ct. 1723, 29 L.Ed.2d 222 (1971).

While we do not find that the statements recited by Vanater and Cox standing alone violated the appellants' right of confrontation, these statements, coupled with the other hearsay statements of co-defendants mentioned, do require reversal due to the prejudice that their introduction created which was brought about by the refusal to grant severance. The prejudice inherent in the many statements was such that the limiting instructions given could not have cured the error, but it could have been avoided had the trial court granted the motions of Brumfield and Davidson.

Both filed pre-trial motions for severance of their trials from their co-defendants. And the motion filed by Brumfield specifically raised the question of the possible use by the government of "statements" under *"Bruton v. United States."* A hearing on the motions was either not reported or transcribed, but it is apparent that the *Bruton* problem was brought to the attention of the trial court. The government makes no issue of this.

In response to these motions, the government took the position that there was no *Bruton* problem, contending that "statements and declaration of co-conspirators are an exception to *Bruton v. United States* when made during the life of the co-conspirator." [2]

The trial court denied the motions for severance, without taking any step to insure that statements in violation of *Bruton* would not be admitted into evidence. In light of the numerous statements admitted that created *Bruton* problems, it is clear that adequate precautions were not taken, although they were available. It is equally clear that the government knew about the testimony of the witnesses before the trial but took an untenable legal position which sought to avoid *Bruton* problems.

■ Although Rule 14 of the Federal Rules of Criminal Procedure places the grant or denial of a motion for severance in the sound discretion of the trial court, if a substantial degree of prejudice springs from a joint trial, a severance is mandated. The facts peculiar to each case will determine whether sufficient prejudice exists to make the denial of a severance reversible error. *United States v. Shuford*, 454 F.2d 772, 776 (4th Cir. 1971).

■ When it is brought to the attention of the trial court in connection with a severance motion that *Bruton* problems may be caused by statements of co-defendants to be used in a joint trial, the court should make inquiry as to the statements intended to be used and then decide what remedial steps are required. The remedial action may be in the form of the exclusion of the statements at a joint trial, deletion of references to co-defendants against whom the statement

2. A part of the written response to this motion of Brumfield follows: "There is no *Bruton* problem of which the Government is now aware. Statements and declaration of co-conspirators are an exception to *Bruton v. United States* when made during the life of the co-conspirator." The obvious error in the position is that a declaration is not admissible if made after the conspiracy has ended, but may be if made before, or, to say it another way, during the life of the conspiracy.

or statements are inadmissible, or severance.[3]

While Truslow and Brumfield later took the stand and by the nature of their testimony removed any confrontation problems as to their declarations, their testifying did not cure the initial and continuing prejudice created by the use of the many highly damaging and incriminating statements. The court could not have known at the time severance was denied that they would testify, and we can only speculate as to whether the use of such inadmissible statements compelled them to take the witness stand.

Nor does the use of limiting instructions in a case in which a multitude of such statements are solicited cure the error. To require the jurors to ignore the inadmissible hearsay statements that strongly incriminate the appellants and to use it only against the declarant may ask the impossible. *Bruton*, 391 U.S., p. 129, 88 S.Ct. 1620; *Delli Paoli*, 352 U.S., pp. 246–8, 77 S.Ct. 294 (Justice Frankfurter dissenting).

In view of the "substantial risk," *Bruton*, 391 U.S., p. 126, 88 S.Ct. 1620, that the limiting instructions used in this case

were not followed by the jury, coupled with the failure of the trial court to prevent the introduction of the multitude of offending statements, we must reverse the judgments of conviction of Brumfield and Davidson for the failure of the trial court to order a severance or take other preventive action.

Since no alternative to severance was considered by the court, the failure to sever requires reversal. We do not, however, instruct the trial court as to which method of preventing the *Bruton* problem it should utilize on retrial.

■ We have considered whether or not the error above mentioned may be only harmless, procedural or constitutional. Since we are left in grave doubt as to whether it had substantial influence in bringing about a verdict, *Krulewitch*, 336 U.S., p. 445, 69 S.Ct. 716, and cannot say beyond a reasonable doubt that it is harmless, *Harrington v. California*, 395 U.S. 250, 89 S.Ct. 1726, 23 L.Ed. 284 (1969), we are of opinion that it is not harmless error. Cf. *Schneble v. Florida*, 405 U.S. 427, 92 S.Ct. 1056, 31 L.Ed.2d 340 (1972).

■ The United States contends that *Bruton* does not apply to conspiracy

**3.** As *Bruton* points out, 391 U.S. pp. 131–2, 88 S.Ct. 1620, F.R.Cr.P. 14 was amended in 1966 to enable a trial court to avoid just such a problem as was presented here. The purpose of the amendment is to provide a procedure where the issue of possible prejudice can be avoided on a motion for severance.

F.R.Cr.P. 14 provides in part: "In ruling on a motion by a defendant for severance the court may order the attorney for the government to deliver to the court for inspection *in camera* any statements or confessions made by the defendants which the government intends to introduce in evidence at the trial."

See Section 2.3 of the American Bar Association Project on Standards for Criminal Justice, Joinder and Severance (Proposed Revisions of Standards, 1968) which provides:

"(a) When a defendant moves for a severance because an out-of-court statement of a codefendant makes reference to him but is not admissible against him, the court should determine whether the prosecution intends to offer the statement in evidence at the trial. If so, the court should require the prosecuting attorney to elect one of the following courses:

(i) a joint trial at which the statement is not admitted into evidence; (ii) a joint trial at which the statement is admitted into evidence only after all references to the moving defendant have been deleted, provided that, as deleted, the confession will not prejudice the moving defendant; or (iii) severance of the moving defendant.

\* \* \* \* \* \*

(c) When such information would assist the court in ruling on a motion for severance of defendants, the court may order the prosecuting attorney to disclose any statements made by the defendants which he intends to introduce in evidence at trial."

See also *Nelson v. O'Neil*, 402 U.S. 622, 635, 91 S.Ct. 1723, 29 L.Ed.2d 222 (Justice Marshall dissenting) (1971); 1 Wright, *Federal Practice and Procedure, Criminal*, § 224, pp. 454–56; 8 *Moore's Federal Practice* ¶ 14.04[2](c), 2d ed. 1975. Professor Moore notes that "the majority in *Bruton* did not spell out what alternatives are available to the prosecution other than severance of defendants or exclusion of statements, although in a footnote it questioned the effectiveness of redaction."

cases. From what has been said, it is apparent that we are of opinion that it may. It also contends that *Bruton* should not apply to statements made by one conspirator after the conclusion of the conspiracy which tend to implicate another conspirator, and that it should not apply to this case because *Bruton* was the case of a confession to law enforcement officers as distinguished from statements such as those found here. Again, we are of opinion that the distinctions are not valid.

## II

Dozens of other objections were made during the trial and accompanying proceedings, most of which we do not reach, or treat in any detail, but some deserve attention. Many will not recur on re-trial because of our holdings on severance and the admissibility of evidence as previously explained, but some may.

## A.

The indictment charged a conspiracy beginning on or about January 1, 1972 and culminating on or about April 15, 1972, after the shooting of Graziani. The prosecution offered the testimony of one James Haught to show conversations between C. Donald Robertson, James Haught and Pete Haught indicating Robertson's solicitation of their help in a plan to kill Graziani because of Graziani's past and prospective testimony against Robertson, James Haught, and Robertson's brother. These statements of Robertson elicited from Haught were made during the summer of 1970 and perhaps as late as August of 1971, and were offered as declarations of a co-conspirator made in furtherance of the conspiracy. The government also contends Robertson's statements should be admitted to show his bad intent although he was not indicted.

Before the testimony of James Haught was taken, the court properly said it would sustain an objection to Haught's testifying because the United States had not yet, at that time, adequately proven that Robertson was a co-conspirator, and

that a conspiracy extending back to the dates James Haught proposed to testify about had not then been established. When the prosecution offered an additional reason for Haught's testimony as presenting evidence of his own participation in the conspiracy, the court reconsidered.

Defense counsel objected to Haught's testifying on the grounds that the defendants had nothing to do with the 1970–71 discussions about which Haught was to testify.

■ Although Haught's testimony may have been admissible as tending to show a conspiracy in 1970–71 between Robertson, Pete Haught and James Haught, it offered no link, even by inference, between the defendants and the Robertson-Haught-Haught plans to kill Graziani. Neither did it offer any link between the Robertson-Haught-Haught conspiracy and any one in the 1972 conspiracy except Robertson. In fact, there was no evidence adduced at trial which would tend to show a connection between the 1970–71 murder discussions and the defendants, or which would tend to refute the existence of two separate conspiracies.

■ Acknowledging that Haught's testimony may have tended to show the existence of a conspiracy between Robertson, Pete Haught and James Haught, the same testimony also shows that that conspiracy terminated at the latest in August of 1971, some time subsequent to the withdrawal of the Haught brothers. Robertson's continued intent to kill Graziani during the interim period until early 1972 does not constitute a conspiracy for a man cannot conspire with himself. *Morrison v. California,* 291 U.S. 82, 92, 54 S.Ct. 281, 78 L.Ed. 664 (1934).

■ Other than the participation of Robertson in both conspiracies, which did have the same goal, the United States has shown no connection between the Robertson-Haught-Haught conspiracy and the Robertson-Truslow–Brumfield–Davidson, et al., conspiracy some several months later. In order for statements by a conspirator to be admissible against

other conspirators, the statements must have been made in furtherance of the conspiracy charged. The Supreme Court has pointed out that this prerequisite has been scrupulously observed by the federal courts. *Krulewitch v. United States,* 336 U.S. 400, 443, 69 S.Ct. 716, 93 L.Ed. 790 (1949).

This court, in considering a challenge to the introduction of evidence of an alleged co-conspirator's criminal activities prior to the formation and existence of the conspiracy, ruled the admission of such evidence prejudicial error. *United States v. Vaught,* 485 F.2d 320 (4th Cir. 1973).

In *Vaught,* as here, the co-conspirator, whose acts and statements were admitted against defendants, was not tried as a co-defendant. His acts and statements occurred prior to the conspiracy involving the defendants. There also the prosecution introduced no evidence connecting the defendants with the prior acts and statements of the co-conspirator. There, as here, the evidence of acts and statements prior to the existence of the conspiracy permitted " . . . the prosecution to paint . . . [the defendants] before the jury as bad men associating with a criminal companion." p. 323. We there found that in a prosecution for conspiracy, " . . . the acts and words of an alleged co-conspirator prior to the actual formation and existence of a conspiracy [were] totally irrelevant and should be struck from the record." p. 323.

Since the United States did not present any evidence of a connection supporting an inference of participation by these defendants in the Robertson-Haught-Haught conspiracy, or that it continued and became the Robertson-Truslow-Brumfield-Davidson, et al., conspiracy, statements by Robertson made during the first conspiracy are inadmissible against these defendants. *United States v. Vaught,* supra. Cf. *United States v. Curry,* 512 F.2d 1299, 1302, n. 1, (4th Cir. 1975) in which we distinguished

the situation in which there was a single continuing conspiracy.

## B.

Since many objections were to the admissibility of evidence going to the credibility of witnesses, and weight of evidence, and the extent of cross-examination, some of the rules bear repetition.

■ Objection was made to the district court restricting the cross-examination of witnesses as a prelude to calling impeaching witnesses to prove prior inconsistent statements. Such statements are admissible only if a proper foundation has been laid. The proper foundation is set out in *Mattox v. United States,* 156 U.S. 237, 15 S.Ct. 337, 39 L.Ed. 409 (1895), at pp. 245–246, 15 S.Ct. at p. 341 as follows: " . . . not only [the witness] . . . should be asked whether he had ever made such statements, but his attention should be called to the particular statement proposed to be proven, and he should be asked whether, at such a time and place, he had made the statement to the witness whose testimony is about to be introduced." See also IIIA *Wigmore on Evidence,* Chadborne, 1970 § 1025, et seq. The rulings of the district judge were correct, for example, with respect to certain of the cross-examination of the witness Carr.[4]

■ The defense also sought, by the witness Robinson, to impeach Carr by proving a bad reputation for truth and veracity:

"Q. Are you familiar with the general reputation of 'Big Chew' Carr for truth and veracity___?

"Mr. Field: Objection, that is beyond the scope of direct examination.

"Mr. Dougherty: Well, I haven't finished the question yet.

"The Court: It is a question having to do with reputation for truth and veracity and it is improper and the objection will be sustained."

---

4. Our holding is consistent with Federal Rules of Evidence, Rule 613(b).

This ruling was error. Although the allowable form of the question may vary somewhat from one jurisdiction to another, as well as the breadth of the reputation sought to be proved, there is no dissent to the proposition that the bad reputation of a witness for truth and veracity in the community in which he lives should be admitted as going to the weight of his evidence and the credibility of the witness. Although the precise question has apparently not been decided in this circuit, the application of the rule is so widespread we have no hesitation in deciding such inquiry proper under F.R. Cr.P. 26. Reference to the subject has been made in *Minkow v. United States,* 5 F.2d 319, 320 (4th Cir. 1925), and *United States v. Null,* 415 F.2d 1178, n. 2 (4th Cir. 1969). Such an inquiry has been held admissible in many cases, among them *Teese v. Huntingdon,* 23 How. 2, 16 L.Ed. 479 (Dec. Term 1869). See also 2 Wharton's *Criminal Evidence,* Torcia, 13th Ed. 1972, § 471 et seq.[5]

■ A previous conviction of Truslow for robbery was introduced into the record on his direct examination after it had been previously disclosed (properly we assume) he had been in the penitentiary. Truslow then explained this conviction and his resulting confinement on that account. Such explanations should be permitted. See 2 Wharton's *Criminal Evidence,* Torcia, 13th Ed. 1972, § 452. Truslow's attorney then asked if Truslow had ". . . been convicted or sentenced or anything on any other felony?" To the question, Truslow replied that he had not.

The court took the explanation and the later question and answer as going into Truslow's entire record, and allowed cross-examination by the government as to misdemeanors and even as to a murder charge which had been dismissed, which, of course, was very prejudicial.

The briefs are not entirely clear as to why the district court allowed such cross-examination in the face of the authorities. If it was because of the explanation of a felony conviction, not first introduced by the defendant, its ruling was error because the witness had a right to explain the conviction. Previous charges are not admissible in the ordinary case, even for impeachment, and the example of an unrelated homicide charge has been specifically mentioned in this circuit in *Lovely v. United States,* 169 F.2d 386, 391 (4th Cir. 1948). E. g. *Michelson v. United States,* 335 U.S. 469, 482, 69 S.Ct. 213, 93 L.Ed. 168 (1948); *United States v. Pennix,* 313 F.2d 524 (4th Cir. 1963).

On the other hand, if his attorney was laying out Truslow's entire record by the use of the phrase "or anything," then the district judge may very well have been correct in his ruling. He saw the witnesses and heard them testify and we did not, and the connotation of questions and answers was more readily ascertainable by him.

■ In all events, on re-trial we admonish the attorneys on both sides that while, as a general rule, convictions of felony are admissible as going to the credibility of a witness, misdemeanors are not, and evidence of other offenses and charges and acquittals are not unless otherwise admissible. See, for example, *United States v. Weems,* 398 F.2d 274 (4th Cir. 1968); *United States v. Frazier,* 418 F.2d 854 (4th Cir. 1969). This rule is too well known to bear extensive citation, and we mention it so the attorneys may be governed accordingly.

■ Along the same line, the defendants complain that they were unduly restricted in their cross-examination in attempting to show the interest or bias of witnesses. An example is the cross-examination of the witness Carr.

The defendants were prevented from asking Carr if he were aware of the Habitual Criminal Act, the defense taking the position that pending criminal

---

**5.** Federal Rules of Evidence, Rule 608 approves at least the same narrow question which is described as the majority rule. See Advisory Committee's Note to Rule 608.

**266**

charges (about which the defense also was prevented from examining the witness) might have subjected the witness to punishment under such statute. The defendants also say they may cross-examine for the purpose of showing fear or expected favor as a result of not testifying or testifying.

We think such inquiries should have been allowed under *Alford v. United States,* 282 U.S. 687, 51 S.Ct. 218, 75 L.Ed. 624 (1931), where the rule is stated: "Nor is it material . . . whether the witness was in custody because of his participation in the transactions for which [the] . . . [defendant] was indicted. Even if the witness were charged with some other offense by the prosecuting authorities, . . . [defendant] was entitled to show by cross examination that his testimony was affected by fear or favor growing out of his detention." 282 U.S. 687, 693, 51 S.Ct. 218, 220. While the *Alford* reasoning should also apply to any other interest a witness may have had for cooperating with the prosecution, we do not intend to give either side a license to cross-examine merely to harass a witness, or to do violence to the rule that the extent of cross-examination is "within the sound discretion of the trial court." *Alford,* p. 694, 51 S.Ct. p. 220. The trial judge yet has a duty to protect the witness from questions which merely ". . . harass, annoy, or humiliate him." *Alford,* 282 U.S. p. 694, 51 S.Ct. 218.

The judgments of conviction must be vacated and a new trial ordered.

*Reversed and remanded.*