878 F.2d 379
Unpublished Disposition
 NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
UNITED STATES of America, Plaintiff-Appellee,
v.
Reginald C. BARRETT, Jr., Defendant-Appellant.
UNITED STATES Of America, Plaintiff-Appellee,
v.
Jose Eliecer LONDONO, Defendant-Appellant.
UNITED STATES Of America, Plaintiff-Appellee,
v.
Jose Antonio STORINO, Defendant-Appellant.
 No. 88-5081.
 United States Court of Appeals, Fourth Circuit.
 Argued April 13, 1989.
Decided June 16, 1989.
 
 David Harrison Hopkins, Charles N. Shaffer (Shaffer & Davis, Chartered on brief), Sandra Jean Boek for appellants.
 Sidney Rocke, Special Assistant United States Attorney (Henry E. Hudson, United States Attorney on brief) for appellees.
 Before DONALD RUSSELL and CHAPMAN, Circuit Judges, and BUTZNER, Senior Circuit Judge.
 PER CURIAM:
 
 
 1
 Appellants were each convicted of possession of cocaine with intent to distribute in violation of 18 U.S.C. Sec. 841(a), interstate travel in aid of racketeering in violation of 18 U.S.C. Sec. 1952(1) & (3), and other drug related offenses arising out of a plan to bring large quantities of cocaine into the State of Virginia. Appellants were arrested in the parking area of the Washington National Airport at the moment six kilograms of cocaine were being delivered. All of the appellants claim error by the trial court in denying requests for informant information, in limiting the cross examination of the informant, in admitting evidence of appellant Londono's previous deportation from the United States, in failing to suppress appellant Barrett's post-arrest statements, and appellants Storino and Londono claim error in failing to sever their trials from that of Barrett. Finding no merit in these exceptions, we affirm.
 
 
 2
 * Appellant Barrett was renting a farm in Aldie, Virginia in the fall of 1987 when Chafic El Maghariki (Chafic) asked to live there. Barrett claims that although he had been involved in drug trafficking previously, and had prior drug convictions, at the time he met Chafic he was not interested in or involved with drugs. He claims that he was unduly persuaded and entrapped by Chafic, who became a DEA informant, into returning to the drug business. Chafic testified that Barrett was trying to arrange the importation of 700 kilograms of cocaine into the United States from Colombia and that they went to Mexico in an effort to work out the details. Chafic informed the DEA of Barrett's efforts and Agent William Yout took over the case. Chafic introduced Barrett to Yout, who was posing as a drug dealer interested in purchasing multi-kilos of cocaine. At their initial meeting on October 9, 1987, Yout purchased one kilo of cocaine from Barrett at his farm. This kilo had been previously retrieved from Indiana by Barrett and Chafic. At this meeting and sale, Yout and Barrett discussed additional coke purchases. One week later Yout and Barrett met at LaGuardia Airport in New York to discuss future purchases, and they met again on November 9, 1987 at National Airport for further discussions. In subsequent telephone conversations they agreed upon a price of $20,000 per kilo for 12 kilos of cocaine, but the delivery site and date were not set. Additional telephonic communications followed and DEA agents Emile Manara and Judy Young came into the pictures as alleged associates of Yout.
 
 
 3
 On December 4, 1987, Agent Manara met Barrett at the Marriott in Arlington, Virginia, but Barrett said he did not like to do business in motels and would prefer to make the sale at his farm. He counted $120,000 Manara had brought to the meeting and stated that the kilos had been brought from New York by two persons in the cavity of an automobile. It was agreed that the deal would be consummated at the National Airport, and Barrett stated he would put the cocaine into a parked car at the airport and give Agent Young the keys so that the car could be driven away.
 
 
 4
 That afternoon Barrett and Manara met at the airport and walked to the parking area. Other DEA agents had the area under surveillance, and they, in addition to Manara, noticed that appellants Londono and Storino were nearby and acting as lookouts. When Barrett opened the trunk of the automobile and showed Manara the six kilos of cocaine, he was arrested. Londono and Storino were arrested as they attempted to leave the area.
 
 
 5
 Barrett consented to a search of the farm and Storino's automobile was found there. Testimony established that the vehicle had been modified by lowering the gas tank to make an area or cavity to facilitate the concealment and transportation of drugs.
 
 II
 
 6
 Pursuant to Federal Rule of Criminal Procedure 16 Barrett moved for information about the informant Chafic, seeking a copy of his conviction record, any charges anticipated to be brought at the time he began his cooperation with the DEA agents, any promises or representations made to him including immunity or other leniency, any statements made to induce his cooperation in this case or others, any statements or terms of employment and whether payment was by cash or by check, the name of each case, case number and the nature and scope of activities of Chafic, copies of all sworn testimony in any other forums, copies of documents or transcripts evidencing unreliability, the circumstances of any polygraph examination and the informant's file maintained by the DEA.
 
 
 7
 In response to this motion, the United States Attorney stated that since the information sought was primarily for impeachment purposes, it would be produced five days before trial, if he planned to call Chafic as a government witness. The trial judge agreed with this course of action. Chafic was not called as a government witness, but Barrett called him as a defense witness in an effort to establish entrapment. Appellants claim error in the failure to provide all of the documents they sought under Rule 16 and also claim that the trial judge unduly restricted the examination of Chafic.
 
 
 8
 The court allowed Barrett's attorney to ask Chafic about his employment, the way he was paid and what he did in the present case. The court also allowed testimony as to Chafic's criminal history, his business interests and any promises or agreements between Chafic and the DEA. He was also allowed to testify that he had previously worked for the DEA, but the judge sustained a government objection as to the specifics of other cases. Questions were also allowed which required Chafic to testify as to his income and employment since the Barrett arrest.
 
 
 9
 Under Brady v. Maryland, 373 U.S. 83 (1963), and Giglio v. United States, 405 U.S. 150 (1972), the government must furnish the defendant with material that may be used to substantially impeach a key government witness. However, these cases are not applicable to the present facts. Chafic was not called as a government witness and he was only a minor participant in the activities that produced the arrest and conviction of the defendants. Once he introduced Barrett to Yout, the initiative was taken by Yout and Chafic played no important role in the subsequent events. The appellants had the benefit of Chafic's testimony, and they were allowed to prove his employment by the DEA for impeachment purposes.
 
 
 10
 We find no error in the rulings by the trial judge in sustaining objections to testimony that would have gone into the specific details of other cases in which Chafic had been involved.
 
 
 11
 The failure of the government to produce the information requested under Rule 16 did not prejudice Barrett in his effort to establish entrapment. Since Barrett had five prior felony drug convictions and the evidence showed various meetings and conversations with the DEA agents, and trips to Mexico, Indiana and New York, it is difficult to see how he expected to establish the affirmative defense of entrapment.
 
 III
 
 12
 Appellants Londono and Storino claim error because the trial court denied their motions to sever their trials from that of Barrett. They claim a prejudicial spill-over effect from testimony about Barrett's prior convictions, prior drug dealings, and efforts to import large quantities of cocaine from South America. Under Federal Rule of Criminal Procedure 8(b), defendants may be charged together if they are alleged to have participated in the same act or transaction constituting an offense or offenses. It is not necessary that all defendants be charged in all counts of the indictment or with all of the underlying acts. Conspiracy cases are particularly appropriate for joinder and joint trial, even though there may be some spill-over of evidence that is admissible against one defendant and not another. The trial judge covered this problem in his final charge and there was no request by defense attorneys for an instruction on this point during the presentation of evidence. In United States v. Lane, 474 U.S. 438, 449 (1986) the court stated:
 
 
 13
 [W]e hold that an error involving misjoinder "affects substantial rights" and requires reversal only if the misjoinder results in actual prejudice because it "had substantial and injurious effect or influence in determining the jury's verdict."
 
 
 14
 There has been no showing that the joint trial had an injurious effect on determining the jury's verdict, and joinder in the present case is in keeping with Bruton v. United States, 391 U.S. 123, 134 (1968), which stated that joint trials "conserve state funds, diminish inconvenience to witnesses and public authorities, and avoid delays in bringing those accused of crime to trial."
 
 IV
 
 15
 There is no merit to Londono's claim that he was prejudiced because the government brought out the fact that he had been previously deported as an illegal alien. He opened the door to this type testimony when he called his sister as a character witness and she testified to the effect that he had never done anything illegal or against the law. She was then asked about his deportation and this was proper under Michelson v. United States, 335 U.S. 469, 479 (1948), where the court discussed the use of and cross examination of character witnesses. It stated:
 
 
 16
 The price a defendant must pay for attempting to prove his good name is to throw open the entire subject which the law has kept closed for his benefit and to make himself vulnerable where the law otherwise shields him ... his own witness is subject to cross-examination as to the contents and extent of the hearsay on which he bases his conclusions, and he may be required to disclose rumors and reports that are current even if they do not affect his conclusion.
 
 
 17
 Id.
 
 V
 
 18
 There was sufficient evidence to convict Londono and Storino although they did not show up until late in the day. They contend that they were mere couriers and not involved in a conspiracy. Chafic testified that Barrett had asked him to drive Barrett's automobile to a particular repair shop in New Jersey, and at this repair shop Londono had inspected the car to determine how many kilos of cocaine could be hidden in it. Londono admitted that he drove down from New Jersey in the car that contained the cocaine that was sold at the airport. However he testified that he was coming to Virginia in the hope of finding work on a farm, but he did not know the name of anyone who owned a farm or of any openings on a farm. Storino owned the automobile that was used to transport the cocaine and this automobile had been modified to provide an enlarged concealed area for transportation.
 
 VI
 
 19
 Appellants Londono and Storino claim error because of the failure of the trial court to suppress Barrett's post-arrest statement in which he identified photographs of Londono and Storino and stated that they were the drivers of the automobile from New Jersey. When Barrett was on the stand, he admitted that he had told the agents that Londono and Storino had "brought the car that had the drugs in it. I did not tell him that they brought the drugs. I said they brought the car that the drugs were concealed in. That is what I told him." Appellants contend that this testimony violated the rule established in Bruton v. United States, 391 U.S. 123 (1968) and United States v. Truslow, 530 F.2d 257 (4th Cir.1975). However, a Bruton problem was not created in the present case because Barrett took the witness stand and was subject to cross examination by the attorneys for Londono and Storino. Truslow, like Bruton, involved a statement by one defendant that implicated other defendants and the declarant did not testify. The crucial difference is that in the present case Barrett did testify and was subject to cross examination. The present facts are similar to those in United States v. Palow, 777 F.2d 52 (1st Cir.1985) which held that there was no confrontation problem in the admission of a codefendant's post-arrest statement against other defendants where the codefendant testified and was cross examined by counsel for the other defendants.
 
 
 20
 We find no merit in the remaining exceptions, and we affirm.
 
 
 21
 AFFIRMED.