UNITED STATES of America,
Plaintiff–Appellee,

v.

Davy L. HILLING,
Defendant–Appellant.

UNITED STATES of America,
Plaintiff–Appellee,

v.

David P. NEUBAUER,
Defendant–Appellant.

Nos. 87–3121, 87–3123.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Nov. 4, 1988.

Decided Dec. 20, 1988.

Terrence Kellogg, Seattle, Wash., for defendant-appellant Hilling.

Robert O. Wefald, Wefald Law Office, Ltd., Bismarck, N.D., for defendant-appellant Neubauer.

Robert H. Westinghouse and Thomas C. Wales, Asst. U.S. Attys., Seattle, Wash., for plaintiff-appellee.

Before NELSON, BOOCHEVER and BRUNETTI, Circuit Judges.

BRUNETTI, Circuit Judge:

This appeal is from a conspiracy conviction that arose out of an elaborate kickback scheme whereby defendant Hilling, chairman of the board of directors of Irving Savings Association in Irving, Texas; defendant Neubauer, operations manager of I.C.R. Mortgage Bankers, Inc., a wholly owned subsidiary of Irving Savings; defendant Gray, chairman of the board of directors of Home Savings and Loan Association in Seattle, Washington; and defendant Olano, chairman of the board of directors of Alliance Federal Savings and Loan Association in Kenner, Louisiana, utilized their control to defraud these institutions of money by making loans and extensions of credit to each other in exchange for kickbacks from the loan proceeds or through the receipt of reciprocal loans and extensions of credit. The defendants' scheme caused multiple loans and extensions of credit to be issued from these financial institutions, culminating in Home Savings and Loan Association transferring $2.346 million dollars to Alliance Federal

Savings and Loan Association to close a fraudulent condominium deal in New Orleans.

A jury convicted Hilling and Neubauer of one count of conspiracy to violate the federal wire fraud statutes in violation of 18 U.S.C. § 371. Hilling and Neubauer were acquitted of the underlying substantive offenses, including engaging in wire fraud in violation of 18 U.S.C. § 1343, and transporting funds obtained by fraud in interstate commerce in violation of 18 U.S.C. § 2314. The defendants were sentenced to five years of imprisonment and were ordered to pay restitution amounting to $17,-599,910 jointly and severally with the other defendants found guilty of participating in the conspiracy.

The indictment charged that the defendants "knowingly executed, through wire transfers in interstate commerce, a scheme ... to defraud the depositors and other shareholders of [the various financial institutions] and the Federal Home Loan Bank Board ... of their right to have the business and affairs of these financial institutions conducted honestly and impartially; free from deceit, craft, trickery, corruption, fraud, undue influence, dishonesty, and conflict of interest; and in a manner consistent with the[ir] fiduciary duty." At the government's request, the district court instructed the jury that

> [D]efendants are charged with "executing a scheme and artifice (1) to defraud the depositors and other shareholders of those financial institutions and the Federal Home Loan Bank Board (FHLBB) or (2) to obtain money by false and fraudulent pretenses, representations and promises." Instruction No. 18.

The court then instructed the jury:

> "One way in which the government may establish a scheme or artifice to defraud is to show beyond a reasonable doubt that a defendant, acting with the specific intent to defraud, *has deprived a financial institution of the honest services of one of its officers or directors or of its right to have its business and affairs conducted honestly and impartially, free from deceit, fraud, undue influ-*

*ence, and conflict of interest, and in a manner consistent with the fiduciary duty owing by officers and directors* of the financial institution to the depositors and other shareholders of the financial institution." Instruction No. 19 (emphasis added).

On appeal, Hilling and Neubauer argue that their conspiracy conviction must be overturned in light of the Supreme Court's recent decision in *McNally v. United States*, 483 U.S. 350, 107 S.Ct. 2875, 97 L.Ed.2d 292 (1987), decided after the conviction in this case. Although conceding that *McNally* applies to this case and conceding that the instruction in question was erroneous under *McNally*, the government argues that the challenged language, rather than describing intangible rights, must necessarily have been understood by the jury as referencing a property right. Because the indictment, jury instructions and the proof at trial in the instant case permitted the jury to convict on the now-invalid nonproperty rights theory, we reverse.

In reviewing the district court's order, we are bound by *McNally* despite the fact that it was decided after the jury convicted Hilling and Neubauer and was therefore unavailable to the district court. *United States v. Asher*, 854 F.2d 1483, 1487 (3rd Cir.1988) (internal citations omitted). *See Griffith v. Kentucky*, 479 U.S. 314, 107 S.Ct. 708, 716, 93 L.Ed.2d 649 (1987) (a new rule for the conduct of criminal prosecutions is to be applied retroactively to all cases pending on direct appeal).

Relying on the legislative history, the Supreme Court in *McNally* held that the mail fraud statute was intended to protect property or monetary rights, broadly defined, but not "the intangible right of the citizenry to good government." *McNally v. United States*, 107 S.Ct. at 2879. *See Carpenter v. United States*, 484 U.S. 19, 108 S.Ct. 316, 320–21, 98 L.Ed.2d 275 (1987) (reiterating non-property rights are not covered by the mail and wire fraud statutes).

In *McNally*, a state official chose an insurance agent to provide insurance for the state, in exchange the agent paid a

portion of its commission to other insurance agencies owned and controlled by the state official. The jury was charged as follows:

> [D]efendants devised a scheme ... to ... defraud the citizens ... of their right to have the Commonwealth's business and its affairs conducted honestly, impartially, free from corruption, bias, dishonesty, deceit, official misconduct, and fraud; and ... obtain ... money ... by means of false and fraudulent pretenses.

*McNally*, 107 S.Ct. at 2878.

Although the state official did receive commissions, the commissions were not the Commonwealth's money and the state was not deprived of any property. According to the Court, "the premium for insurance would have been paid to some agency, and what [defendants] did was to assert control that the Commonwealth might not otherwise have made over the commissions paid by the insurance company to its agent;" hence, no violation of the mail fraud statute. *Id.* at 2882.

According to the Court, the mail fraud statute's reference to schemes "to defraud," or "for obtaining money or property by means of false or fraudulent pretenses, representations, or promises" should not be read disjunctively; rather, the word "defraud" itself also refers to "wronging one in his property rights." *Id.* at 2880–81 (internal citations omitted). Because the charge in *McNally* did not require the jury to find the state was defrauded of a money or property interest, the court held that the convictions must be reversed. *Id.* at 2882.

Since the Court's decision in *McNally*, a significant number of pre-*McNally* criminal convictions have been challenged on the ground that the convictions were based on the intangible rights instructions. In those cases in which the indictment, the proof presented at trial and the "instructions to the jury could not assure that money or property interests were implicated, [verdicts] have been overturned on *McNally's* authority." *United States v. Asher*, 854 F.2d 1483, 1490 (3rd Cir.1988) (internal citations omitted). *See United States v. Dada-*

*nian*, 856 F.2d 1391 (9th Cir.1988) (modifying decision in light of *McNally* by order granting petition for rehearing and reversing defendant's conviction for mail fraud).

In the present case, the proof, indictment and the jury instructions do not assure that the defendants' convictions were based on a scheme that had the result of effecting monetary or property losses to the shareholders and depositors of the financial institutions. The jury charge and the indictment are permeated with the pre-*McNally* "right to honest services" theory. The jury was instructed that it was possible to convict even if there was *no* financial harm, and that harm to the shareholders and depositors' intangible rights would suffice. We cannot assume these instructions had no effect.

The government seeks to realign itself with the holding in *McNally* by contending that this case has always concerned defrauding the shareholders and depositors of their property interests and urges that the jury could not find that the defendants were guilty of depriving the depositors and shareholders of honest officers without also finding that they defrauded the institution of its money.

We disagree. According to the government's proof, defendants Hilling and Neubauer issued multiple letters of credit without security, fees, or recordation and without establishing creditworthiness; these letters of credit were issued by Hilling and Neubauer after federal restrictions were in place that prohibited their issuance and were back dated to appear as though they had been issued prior to the restrictions; and defendants Hilling and Neubauer failed to include letters of credit issued and approved by them in a commitment list prepared for the Federal Home Loan Bank Board.

If the jury believed only this evidence, it could have found that defendants Hilling and Neubauer did not conduct the business and affairs of the financial institutions in which they were officers in an honest and impartial manner, "free from deceit, fraud, undue influence, and conflict of interest;" and the jury did not have to find that the

shareholders and depositors had been defrauded of money or property interests. Accordingly, the instructions and the evidence specifically permitted the jury to find a violation based on intangible rights. "While it is likely that the jury found that the defendants were involved in a scheme to obtain money, it remains possible that the jury found the defendants guilty under the theory struck down in *McNally*." *United States v. Alexander*, 850 F.2d 1500, 1503 (11th Cir.1988) (reversing a mail fraud conviction based on intangible rights instruction).

The government urges us to affirm the convictions on the authority of cases that have affirmed pre-*McNally* mail or wire fraud convictions.

For example, the government relies on the Third Circuit opinion, *United States v. Piccolo*, in which the mail fraud and conspiracy convictions were affirmed after the jury was given an intangible rights instruction. 835 F.2d 517 (3d Cir.1987), *cert. denied*, —— U.S. ——, 108 S.Ct. 2014, 100 L.Ed.2d 602 (1988). In *Piccolo* the jury was instructed that to convict Piccolo of mail fraud, it must find that "the defendant devised a scheme ... to defraud United Engineers of its right to the honest, faithful and loyal services of its employee *and further, to defraud ... United Engineers ... of money*." *Id.* at 520 (emphasis in original). The court found that the jury could not, given the totality of the instructions, have convicted Piccolo unless it found that the object of the scheme was to obtain money. *Id.*

In contrast, the jury in this case was not instructed that they had to find that the depositors and shareholders were defrauded of money.

Similarly, in *United States v. Wellman*, the indictment alleged a scheme to defraud a company of "its right to have safe and authorized equipment" and to have obtained money "through false pretenses, representations and promises." 830 F.2d

1453, 1463 (7th Cir.1987). Unlike the present case, the jury charge exactly tracked the language of the mail fraud statutes and the "scheme to defraud" was not defined in terms of intangible rights. In upholding the convictions, the court held that the jury instructions were consistent with *McNally*. *Id.*

The government also argues that this case is similar to *United States v. Bailey*, 859 F.2d 1265 (7th Cir.1988) wherein the defendants were convicted of mail fraud and conspiracy for their roles in various schemes to defraud the Federal Home Loan Bank Board, the Federal Savings and Loan Insurance Corporation, and the shareholders and depositors of a savings and loan association of money. The indictment alleged the defendants schemed to deprive the shareholders and depositors of their right to have the affairs of the savings and loan association conducted "honestly, fairly, and free from craft, trickery, deceit, corruption, dishonesty and fraud." *Id.* at 1275. The jury was instructed that it must find beyond a reasonable doubt "that the defendant knowingly participated in a scheme to defraud, as described in the indictment." *Id.* at 1276. An intent to defraud was defined as an intent to injure the savings and loan association and bring about improper financial gain to the defendant. *Id.* at 1277. Further, the jury was instructed on the defense theory of "good faith"; the defendant undertook all the transactions for the purpose of benefiting the savings and loan association and not for the purpose of his own personal gain. *Id.* at 1277. According to the evidence and arguments presented at trial the schemes were aimed at depriving the savings and loan association of its property interests, and the seventh circuit upheld the pre-*McNally* conviction. *Id.* at 1277.

The government's reliance on *Piccolo*, *Wellman*, *Bailey* and other pre-*McNally* cases is erroneous.[1]

---

1. We are unpersuaded by the government's analogy to the following cases: *United States v. Asher*, 854 F.2d 1483 (3rd Cir.1988) (affirming pre-*McNally* conviction of mail fraud where state official accepted a bribe in exchange for

awarding a contract to an organization despite a lower bid to perform the same services; the contract itself deprived the state of a tangible savings); *United States v. Fagan*, 821 F.2d 1002 (5th Cir.1987) (affirming a pre-*McNally* convic-

In sum, the indictment and jury instructions which allege conduct that does not violate the wire fraud statutes and the trial evidence convince us that the jury did not necessarily find that the scheme in which Hilling and Neubauer participated were aimed at their victims' property rights. The convictions must be reversed because the indictment and jury instructions did not require the jury to find all the elements of the crime. We decline to reach the other points raised by Hilling and Neubauer. Since reversal is based on defects in the indictment and the jury instructions rather than on insufficiency of the evidence, there is no obstacle to retrial.

REVERSED and REMANDED.

tion of mail fraud where drilling company employee awarded boat lease contracts in exchange for kickbacks; the faithless employee deprived his employer of the fair lease price that the employer would have been able to negotiate without the kickbacks).