**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**Joseph SORIANO; Rickey Santos,
Defendants–Appellants.**

**No. 88–1146.**

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Dec. 13, 1988.

Decided July 12, 1989.

Amended Aug. 7, 1989.

TANG, Circuit Judge:

This case arises out of transactions involving government officials in Guam. Jospeh Soriano and Ricky Santos were jointly indicted and tried. Soriano was convicted of one count of conspiracy to commit extortion in violation of the Hobbs Act and five counts of mail fraud. Santos was convicted of two counts of mail fraud. In their joint appeal, Soriano and Santos raise six mutual issues and one issue pertains only to Soriano.

First, appellants argue that the district court erred in denying their motions to exclude from evidence mutually incriminating tape-recorded statements on Confrontation Clause grounds, or alternatively to sever their trials. Second, the defendants claim that their mail fraud convictions should be reversed because the indictment defines the offense as defrauding citizens' rights to good government and is deficient under *McNally v. United States*, 483 U.S. 350, 107 S.Ct. 2875, 97 L.Ed.2d 292 (1987). Third, the defendants raise four issues concerning the district court's denial of their motion for acquittal. Finally, Soriano challenges the sufficiency of the indictment with respect to the conspiracy charge. We reverse the mail fraud convictions based on *McNally v. United States*, 483 U.S. 350, 107 S.Ct. 2875, 2879, 97 L.Ed.2d 292 (1987), and affirm the Hobbs Act conviction.

## I. Background

### A. Factual Background

The facts on appeal are generally not in dispute. Paul Calvo had been governor of Guam since 1978. Calvo was defeated for reelection on November 2, 1982. Ricardo Bordallo succeeded as governor on January 3, 1983. Soriano was the Director of the Department of Parks and Recreation in Governor Calvo's administration. After Calvo's unsuccessful bid for reelection, but before leaving office on January 3, 1983, Soriano sought to obtain money from two public appropriation contracts: one for the purchase of beach cleaning equipment and the other for beach maintenance. Soriano evidently intended to benefit from an ongoing conspiracy of Guam officials who

Jerry E. Hogan, Mair, Mair, Hogan & Spade, Agana, Guam, for defendant-appellant Soriano.

Michael F. Phillips, Agana, Guam, for defendant-appellant Santos.

Frederick A. Black, Asst. U.S. Atty., Agana, Guam, for plaintiff-appellee.

Before HUG, TANG and KOZINSKI, Circuit Judges.

awarded government contracts in exchange for kickbacks.

As to the equipment contract, Alfred Pangelinan, the Director of the Guam Bureau of Budget and Management, introduced Soriano to Enrique Manibusan who operated Rapid Supply Enterprises. It was agreed that Manibusan would sell equipment to Guam for $100,000 without undergoing normal bidding procedures. Manibusan had to conduct correspondence with two suppliers on the U.S. mainland in order to accomplish the purchase and delivery of equipment.[1] Manibusan later gave Soriano $500.

Unlike the equipment contract, the beach maintenance contract was awarded on a competitive basis. Ricky Santos was the lowest of three bidders at $74,500 and got the award. There was nothing apparently irregular in the bidding process.[2] Soriano and Santos entered into a contract for Santos to perform the beach maintenance for $74,500.[3] Later that same day, Santos and Soriano amended the beach maintenance contract and in exchange for some additional services increased the price to $150,000.[4] After the Bordallo administration took office, Guam sued to void the amended contract. Santos and the new administration settled the suit by deleting some of the services and reducing the contract price from $150,000 to $75,000.

Deputy Director of Parks and Recreation Chargualaf decided to cooperate with the F.B.I. after being questioned by its agents concerning his involvement in the beach contracts. Chargualaf secretly recorded a personal conversation with Soriano (May 8, 1986), a personal conversation with Santos (May 9, 1986), and a telephone conversation with Soriano (May 16, 1986). The jury listened to tapes of these three conversations and also received transcripts of the same.[5] In all three conversations, Soriano and Santos speak of their knowledge of the payoffs, and implicate each other. In the May 8, 1986 conversation Soriano tells Chargualaf that he gave back all of the money that Santos had given him minus the money Soriano gave Chargualaf. Soriano frequently mentioned Santos' involvement during the May 8 conversation. In the May 9, 1986 conversation Santos refers to Soriano's involvement. Finally, in the May 16 telephone conversation Soriano three times mentions Santos' involvement with Chargualaf.

## B. Procedural History

On October 21, 1987, Soriano and Santos were jointly indicted. Soriano was charged with one count of conspiracy to commit extortion in violation of the Hobbs Act, 18 U.S.C. § 1951 (Count One), and five counts of mail fraud in violation of 18 U.S.C. § 1341 (Counts Two through Six).[6] Santos

---

**1.** This correspondence was the basis for the mail fraud charges in Counts 3, 4, and 5 of the indictment.

**2.** The other bidders were Marvin's Garden at $77,000 and Barrett at $90,000.

**3.** As part of the application process to obtain a contractor's license, Santos wrote several personal checks to pay certain fees. After the checks were cashed and cancelled, Santos' bank returned the checks to Santos by mail. These mailings are the basis of the mail fraud alleged in Counts 2 and 6 of the indictment.

**4.** In exchange for the increased payment, Santos agreed to pick up trash semiweekly rather than weekly, to haul and remove algae semimonthly rather than monthly, and to paint and repair existing lifeguard stands and to construct two new stands.

**5.** The transcripts are translations from Chamorro to English.

**6.** Counts Two through Six charged mail fraud in violation of 18 U.S.C. § 1341 and provided in pertinent part:

2. The public officials listed above, as Government of Guam employees, had the authority and responsibility to ensure and attempt to ensure that the people and citizens of the Territory of Guam received the benefits of honest government and competitive contracts, and to ensure that both were free from fraud, graft and favoritism.

3. Between on or about November of 1982 and the year 1983, in the District of Guam, defendants JOSEPH SORIANO and RICKY SANTOS did willfully and knowingly devise a scheme:

a. To defraud the people of Guam of their right to the loyal, faithful and unbiased services, of the official duties of the above public officials and to have their services, free from corruption, dishonesty and fraud, so that the money and property of the people of Guam could be protected;

was charged with two counts of mail fraud (Counts Two and Six) and one count of obstruction of justice in violation of 18 § 1503 (Count Seven).[7]

Defense counsel each objected in limine to the admission of tape recorded mutually incriminating statements on Confrontation Clause grounds under *Bruton v. United States,* 391 U.S. 123, 88 S.Ct. 1620, 20 L.Ed.2d 476 (1968). Defense counsel also moved in the alternative for a severance of the joint trial. Counsel renewed these motions prior to the introduction of the mutually incriminating tapes and transcripts during testimony by the witness Chargualaf who had stealthily obtained the recordings. Counsel also renewed their objection at the close of the government's case and after trial.

The court admitted the tapes and transcripts based on its interpretation of *Dutton v. Evans,* 400 U.S. 74, 80–90, 91 S.Ct. 210, 215–220, 27 L.Ed.2d 213 (1970), but noted at a post trial release hearing that *Cruz v. New York,* 481 U.S. 186, 193–194, 107 S.Ct. 1714, 1719–1720, 95 L.Ed.2d 162 (1987), could cause reversal of the order denying suppression or severance. Neither Santos nor Soriano took the stand. The jury returned guilty verdicts against both Soriano and Santos.

Soriano and Santos filed a joint appeal of their mail fraud convictions. Soriano individually appeals his Hobbs Act conviction.

## II. Mail Fraud

The sufficiency of an indictment is reviewed de novo. *United States v. Buckley,* 689 F.2d 893, 897 (9th Cir.1982), *cert. denied,* 460 U.S. 1086, 103 S.Ct. 1778, 76 L.Ed.2d 349 (1983).

The operative wording of 18 U.S.C. § 1341, the mail fraud statute which formed the basis of Counts Two through Six, is as follows:

Whoever, having devised or intending to devise any scheme or artifice to defraud or for obtaining money or property by means of false or fraudulent pretenses, ... for the purpose of executing such scheme ... [takes or receives] any matter or thing whatever to be sent or delivered by the Postal Service ... shall be fined not more than $1,000 or imprisoned not more than five years, or both.

In *McNally v. United States,* 483 U.S. 350, 107 S.Ct. 2875, 2879, 97 L.Ed.2d 292 (1987), the Supreme Court held that the mail fraud statute does not reach "schemes to defraud citizens of their intangible rights to honest and impartial government" and that the statute is "limited in scope to the protection of property rights." *Car-*

b. To defraud the people of Guam, its public officers and employees of their right to have the business of the Government of Guam conducted honestly and free from deceit, graft and corruption, thereby depriving the people of Guam of money and property that fair competition would have helped to ensure;

c. To defraud the people of Guam of the secret profits that the public officials accepted from Enrique L.G. Manibusan and defendant RICKY SANTOS, in connection with official duties of these Directors as employees of the Government. Since these public officials served as agents and in a fiduciary capacity on behalf of the people of Guam, these kickbacks were property and money that rightfully belonged to the people of Guam.

4. The scheme to defraud and to obtain money and property was by means of false and fraudulent pretenses, representations and promises, when the defendant well knew at the time that the pretenses, representations and promises would be and were false when made. This scheme to defraud the Territory of Guam of its

lawful governmental services and to obtain money and property by means of false pretenses is set forth more fully below.

5. It was part of the scheme to defraud that Enrique L.G. Manibusan and defendant RICKY SANTOS would intend to and did give to Alfred Pangelinan, Eligio Casil, Ed Chargualaf and defendant JOSEPH SORIANO, gifts of cash in connection with their official duties performed, and to be performed on behalf of the Government of Guam. These public officials would accept these gifts in connections with defendant RICKY SANTOS' and Enrique Manibusan's business and contracts with the Government of Guam.

6. It was part of the scheme to defraud that these above listed Directors would conceal from the people of Guam these gifts of cash and property and their impact on their judgment, as Directors, in their authority and responsibility to engage in honest government and contracts.

7. Count Seven was dismissed at close of the evidence.

penter v. United States, 484 U.S. 19, 108 S.Ct. 316, 320, 98 L.Ed.2d 275 (1987). The Supreme Court reversed mail fraud convictions based on a Kentucky official's participation in a scheme to direct commissions on insurance purchased by the state to an insurance agency in which the Kentucky official had a financial stake. The issue was "whether a state officer violates the mail fraud statute if he chooses an insurance agent to provide insurance for the State but specifies that the agent must share its commissions with other named insurance agencies, in one of which the officer has an ownership interest and hence profits when his agency receives part of the commissions." McNally, 107 S.Ct. at 2881–82. Such a kick back scheme did not come within the reach of § 1341. "[A]ny benefit which the Government derives from the statute must be limited to the Government's interest as property-holder." McNally, 107 S.Ct. at 2881 n. 8.

Appellants argue that the indictment runs afoul of McNally. The indictment alleged that the defendants willfully and knowingly devised a scheme to defraud the people of Guam of (a) "their right to the loyal, faithful and unbiased services, free from corruption, dishonesty and fraud, so that the money and property of the people of Guam could be protected;" (b) "their right to have the business of the Government of Guam conducted honestly and free from deceit, graft and corruption, thereby depriving the people of Guam of money and property that fair competition would have helped to ensure;" and (c) "the secret profits that the public officials accepted."

The government argues that the indictment "connects concepts of honesty and unbiased services to the specific loss of money and property belonging to the people of Guam." The government notes that the trial court instructed the jury "that they must find that the defendants acted with the intention of obtaining money or property from the people of Guam and that property means money or physical property and not merely a citizen's expectations of good government."

■ Even if the jury instructions complied with McNally requirements, they cannot cure a basic flaw in the indictment. United States v. Keith, 605 F.2d 462, 464 (9th Cir.1979); see also United States v. Marolda, 615 F.2d 867, 871 n. 10 (9th Cir. 1980). Hence, we must determine whether the indictment sufficiently charges a scheme to defraud protected property rights and not merely a scheme to defraud unprotected intangible rights to honest and impartial government. Carpenter v. U.S., 108 S.Ct. at 320–21.

We recently held in United States v. Mitchell, 867 F.2d 1232, 1234 (9th Cir.1989), that a conviction based on conduct constituting a scheme to defraud a city and its citizens of their right to have the city's affairs conducted honestly falls within the scope of McNally and is defective. Mitchell was indicted for allegedly using his position as a Councilman for the City of Redondo Beach to help secure zoning approval for a condominium conversion in exchange for money. The indictment was defective under McNally because it failed to allege that Mitchell intended to deprive the city of money or property. The indictment in Mitchell also failed to allege the city was deprived of control over how its zoning rights were allocated, or that Mitchell intended to defraud the city of any financial interest in relation to zoning approval.

■ In the instant case, paragraph three of the indictment charges Soriano and Santos with devising a scheme involving three objectives; while paragraph (c) alleges the deprivation of money and property belonging to the people of Guam, subparagraphs (a) and (b) allege only the loss of the public's right to faithful service and honest government. Because the jury could have convicted Soriano and Santos without finding any loss of money or property, the conviction cannot stand.

Here, as in United States v. Hilling, 863 F.2d 677, 680–81 (9th Cir.1988) the proof, indictment and the jury instructions did not assure that the defendants' convictions were based on a scheme that had the result of effecting monetary or property losses.

The indictment is permeated with pre-*McNally* "right to honest services" theory.

The judgment on the mail fraud counts is reversed and the case remanded for proceedings consistent with this opinion. Since reversal is based on defects in the indictment rather than an insufficiency of the evidence, there is no jeopardy obstacle to further proceedings.[8]

### III. Confrontation Clause

■■■ Appellants contend that the admission into evidence of their separate tape-recorded conversations with Chargualaf, in which each implicates the other as well as himself, infringed their rights under the sixth amendment's confrontation clause as interpreted in *Bruton v. United States*, 391 U.S. 123, 88 S.Ct. 1620, 20 L.Ed.2d 476 (1968), and *Cruz v. New York*, 481 U.S. 186, 107 S.Ct. 1714, 95 L.Ed.2d 162 (1987). If the admission of these effective confessions constituted error, however, it was harmless beyond a reasonable doubt. Pangelinan, Manibusan and Chargualaf, all participants in the scheme, testified as to the involvement of Soriano and Santos. Each defendant, moreover, discussed his own participation with Chargualaf; even if these confessions were improperly admitted at trial, we may consider them in determining whether the alleged confrontation clause violation was harmless. *Cruz*, 481 U.S. at 193–94, 107 S.Ct. at 1719. In light of the overwhelming evidence against Soriano and Santos, any confrontation clause error was harmless beyond a reasonable doubt. *See Delaware v. Van Arsdall*, 475 U.S. 673, 684, 106 S.Ct. 1431, 1438, 89 L.Ed. 2d 674 (1986) (White, J., concurring.). Although we do not reverse on this issue, we note that the district court might have remedied any Confrontation Clause problem by redacting the confessions to eliminate reference to the codefendants. Such redaction obviates the need for severance of trials or suppression of mutually incriminating confessions.[9]

### IV. Hobbs Act

■■ The sufficiency of an indictment is reviewed de novo. *Buckley*, 689 F.2d at 897.

■■ Soriano appeals his individual conviction of conspiring to violate the Hobbs Act, in violation of 18 U.S.C. § 1951[10] as

---

**8.** We direct the parties' attention to *Schmuck v. United States*, —— U.S. ——, 109 S.Ct. 1443, 103 L.Ed.2d 734 (1989) for consideration of the validity of Counts 2 and 6, where the only use of the mails occurred when the bank mailed Santos his cancelled checks. *Schmuck* strongly suggests that such mailings are insufficient to support a mail fraud conviction. *See id.* 109 S.Ct. at 1448 (distinguishing *Kann v. United States*, 323 U.S. 88, 65 S.Ct. 148, 89 L.Ed. 88 (1944).

**9.** There was no indication in the record that a limiting instruction was given in the instant case. The tapes were also not redacted to eliminate reference to the co-defendants. The Confrontation Clause is not violated by admission of a non-testifying codefendant's confession with a proper limiting instruction when the confession is redacted to eliminate not only the defendant's name, but any reference to his existence. *Richardson v. Marsh*, 481 U.S. 200, 107 S.Ct. 1702, 95 L.Ed.2d 176 (1987).

**10.** The text of the statute in pertinent part, is as follows:

Interference with commerce by threats or violence

(a) Whoever in any way or degree obstructs, delays, or affects commerce or the movement of any article or commodity in commerce, by robbery or extortion or attempts or conspires so to do, or commits or threatens physical violence to any person or property in furtherance of a plan or purpose to do anything in violation of this section shall be fined not more than $10,000 or imprisoned not more than twenty years, or both.

(b) As used in this section—

(1) The term "robbery" means the unlawful taking or obtaining of personal property from the person or in the presence of another, against his will, by means of actual or threatened force, or violence, or fear of injury, immediate or future, to his person or property, or property in his custody or possession, or the person or property of a relative or member of his family or of anyone in his company at the time of the taking or obtaining.

(2) The term "extortion" means the obtaining of property from another, with his consent, induced by wrongful use of actual or threatened force, violence, or fear, or under color of official right.

(3) The term "commerce" means commerce within the District of Columbia, or any Territory or Possession of the United States; all commerce between any point in a State, Territory, Possession, or the District of Columbia and any point outside thereof; all commerce between points within the same State through

charged in Count 1 of the indictment on the grounds that the indictment fails to charge all of the required elements and is therefore insufficient.

Paragraph 7 of Count One charges that Soriano:

[K]nowingly and willfully conspired and agreed together with others ... to commit extortion as that term is defined in Title 18 United States Code, Section 1951(b)(2), which extortion would affect commerce as that term is defined in Title 18 United States Code, Section 1951(b)(3) and the movement of materials, equipment, services and labor in commerce.

Further statutory elements are set forth in the count's "objects of the conspiracy" section which provides:

Some of the objects of the conspiracy were ... To obtain money ... not lawfully due them from certain private contractors ... with the consent of these private contractors, this consent being induced under color of official right by ... wrongful use of ... power and authority.

Both Soriano and the government agree that the indictment tracks the language of the statute.

Soriano relies on *United States v. Aguon*, 813 F.2d 1413 (9th Cir.1987) for the proposition that extortion has two additional elements not found in the statute thereby making the indictment factually defective. These additional requisite elements are criminal intent and inducement.

*Aguon* was later argued *en banc*, the three-judge panel's decision withdrawn, and this court held that proof that a defendant "induced" improper payment is an essential element of the crime of extortion and that "inducement" can be in the overt form of a "demand" or in a more subtle form such as "custom" or "expectation." 851 F.2d 1158, 1166. The *en banc* opinion also embraces the three-judge panel's conclusion that criminal intent is a necessary element that the government must prove:

any place outside such State; and all other commerce over which the United States has

No act standing alone is a crime under the Hobbs Act. A guilty mind has to be proved as well as a wrongful deed.

851 F.2d at 1168.

We hold that the indictment sufficiently charged the requisite elements of willfulness and inducement thereby satisfying the *Aguon* requirements. First, the indictment against Soriano explicitly defines extortion as per 18 U.S.C. § 1951(b)(2) which includes the element of "inducement." Second, the indictment also specified the appropriate mens rea, that of acting "knowingly or willingly." Soriano's claim that the indictment runs afoul of *Aguon* is thus without merit.

### V. Admission of Political Statements

■ A court's balancing of the probative value of evidence against its prejudicial harm is reviewed for an abuse of discretion. *United States v. Rubio*, 727 F.2d 786, 798 (9th Cir.1983).

■ Appellants argue that the district court abused its discretion by admitting irrelevant and prejudicial political statements made in the tape recorded conversations of May 8 and May 9, 1986. Santos also complains that the admission of a statement concerning his involvement in a counterfeiting ring was overly prejudicial. Our reversal on the Mail Fraud Counts moots these problems insofar as those respective counts are concerned.

In regard to Soriano's Hobbs Act conviction which we affirm, we find that the probative value of the tape recordings was not substantially outweighed by any prejudicial effect. Hence the court did not abuse its discretion in admitting the tapes containing political comments.

### CONCLUSION

We reverse and remand the mail fraud conviction for proceedings not inconsistent with this opinion. Soriano's Hobbs Act conviction is affirmed.

jurisdiction.

AFFIRMED IN PART, REVERSED IN PART and REMANDED.