**UNITED STATES of America,**
**Plaintiff–Appellee,**

v.

**Kellie J. MYERS, Defendant–Appellant.**

**No. 88–2349.**

United States Court of Appeals,
Seventh Circuit.

Argued Oct. 23, 1989.

Decided Jan. 4, 1990.

Dennis J. Dimsey, Thomas E. Chandler, Dept. of Justice, Civ. Rights Div., Appellate Section, Daniel P. Butler, Dept. of Justice, Civ. Rights Div., Washington, D.C., for plaintiff-appellee.

John A. Walters, Griffith, Ind., F. Allen Tew, Jr., Indianapolis, Ind., for defendant-appellant.

Kellie J. Myers, pro se.

Before CUDAHY, POSNER, and KANNE, Circuit Judges.

POSNER, Circuit Judge.

In 1988 a jury convicted Kellie Myers of conspiracy to interfere with the federal right (conferred by 42 U.S.C. § 3631(a)) to occupy a home without regard to one's race, 18 U.S.C. § 241, and of related offenses. The judge sentenced her to four years in prison.

Four years earlier, the car of a black couple who had just bought a home in Hobart, Indiana had been torched while parked outside the couple's home. Kellie Myers lived with her parents in Hobart. The government's evidence, if believed, established the following additional facts. Myers' parents wanted to sell their home and were concerned that its value would be impaired if there were blacks living in the neighborhood. Myers decided to scare the black couple into leaving, and together with Randall Neal bought two gallons of gasoline at an all-night gas station and set fire to the car. The black couple took the hint and moved away. Neal was prosecuted for arson in an Indiana state court, but acquitted, after which the criminal section of the Justice Department's civil rights division swung into action and charged both him and Myers, whom the state had not prosecuted, with federal crimes. Neal was tried with Myers, also convicted, and also sentenced to four years.

Myers denied any complicity in the fire. At the trial, a fingerprint expert testified that the fingerprints on a can of Stroh's

beer found at the scene of the fire were Neal's, and in passing mentioned that he had also tested (unsuccessfully) for the presence of Myers' fingerprints because Meg McBrayer, a friend of Neal's, had implicated Myers. McBrayer testified to having seen Neal and Myers together the night of the fire. She also testified to a conversation which she had had with Neal, shortly after the fire, in which he had told her that he and "another person" had bought a can of gasoline on the night of the fire and had then gone to the neighborhood of the other person and torched a black man's car because the other person's parents were worried about property values. The other person was of course Myers. But her trial counsel, Martin Kinney, had objected before trial to the admission of this testimony, and to accommodate his objection the government had agreed that McBrayer would not mention Myers by name but instead would refer to her only as "another person."

The gas-station attendant, Ronald Siwy, testified that more than a year after the fire he had identified Myers from a photograph as the woman who on the night of the fire had paid for two gallons of gas and bought two packs of cigarettes while her male companion was pumping the gas into a can that he had brought with him.

Neal took the stand, denied participating in the crime, and in an effort to shift the blame to Myers testified that on the night of the fire, before they separated after drinking together at a bar, she had handed him the Stroh's can on which his fingerprints were later found.

Except for McBrayer's further testimony that Myers asked her not to tell the police anything about the night of the fire, the evidence we have summarized was all the evidence there was against Myers, and she questions the admissibility of much of it. To begin with, she questions the admissibility *against her* of Neal's statement to McBrayer. It was of course admissible against him, as an admission by an opposing party, Fed.R.Evid. 801(d)(2)(A), but the rule is explicit that such an admission is inadmissible against anyone else. An ad-

mission against interest, Fed.R.Evid. 804(b)(3) is not so cabined. The unlikelihood that a person would make a false admission against interest (would, for example, confess to a crime) makes admissions against interest sufficiently reliable to escape the bar of the hearsay rule, and if reliable they should be admissible against anyone to whom they pertain. But an admission against interest, unlike the admission of an opposing party, is admissible only if the declarant is unavailable to testify. Fed.R.Evid. 804(a). Neal was available; he testified. (The statement might have been admissible under this rule as part of the government's case in chief despite Neal's taking the stand, if when the government put in its case it could have made a showing that Neal would take the Fifth Amendment and refuse to testify. That would make him unavailable. But this is not argued; the government admits that the statement was inadmissible against Myers.)

■ Myers argues that Neal's statement should have been excluded from the joint trial altogether, or alternatively that (1) she should have been granted a severance, or (2) the statement should have been edited more carefully so that the identity—or even existence—of the "other person" was not transparent, *Richardson v. Marsh*, 481 U.S. 200, 211, 107 S.Ct. 1702, 1709, 95 L.Ed.2d 176 (1987), or (3), at the very least, the jury should have been instructed that the statement was admissible only against Neal, and not against her. She points out that in *Bruton v. United States*, 391 U.S. 123, 88 S.Ct. 1620, 20 L.Ed.2d 476 (1968), the Supreme Court had thought that the improper admission into evidence of a codefendant's confession that incriminated the defendant was so damaging as to be incurable by a limiting instruction. See also *Gaines v. Thieret*, 846 F.2d 402 (7th Cir. 1988) (per curiam). The government responds that Kinney (Myers' counsel at trial) did not request a severance, that he requested a cautionary instruction but did not respond to the judge's request to submit one, and that any objection based on *Bruton* is obviated because both McBrayer

and Neal testified and were therefore available for Myers to cross-examine.

The government is correct that Kinney's defaults are pertinent. Because of them, any error in the handling of Neal's statement is reversible only if plain, that is, only if, had it not been for the error, Myers probably would have been acquitted. *Johnson v. United States*, 805 F.2d 1284, 1290 (7th Cir.1986); *United States v. Wolf*, 787 F.2d 1094, 1098 (7th Cir.1986).

The government's argument from *Bruton* presents a complicated issue. Although *Bruton* was a federal prosecution, its principal significance is in habeas corpus cases brought by state prisoners. The Bill of Rights does not enact the hearsay rule, *California v. Green*, 399 U.S. 149, 155–56, 90 S.Ct. 1930, 1933–34, 26 L.Ed.2d 489 (1970), but does entitle a criminal defendant (including, by virtue of the Fourteenth Amendment, a state criminal defendant) to confront the witnesses against him. The principles that animate the hearsay rule intersect those that animate the confrontation clause in cases in which a defendant cannot confront his accuser because the accuser is an out-of-court declarant not available to testify. *Nelson v. Farrey*, 874 F.2d 1222, 1226–28 (7th Cir.1989). *Bruton* identified a class of hearsay evidence—the out-of-court confession of an unavailable codefendant that directly implicates the defendant—the admission of which is deemed so injurious to the right of confrontation that it violates the confrontation clause. And in a surprising, though realistic, *Krulewitch v. United States*, 336 U.S. 440, 453, 69 S.Ct. 716, 723, 93 L.Ed. 790 (1949) (Jackson, J., concurring); *United States v. Bozza*, 365 F.2d 206, 214–15 (2d Cir.1966) (Friendly, J.); *Nash v. United States*, 54 F.2d 1006 (2d Cir.1932) (L. Hand, J.), departure from the usual view (or fiction) that limiting instructions cure everything, the Court held that this type of constitutional violation was not so easily cured. But if as here the codefendant (the out-of-court declarant) testifies, the defendant can confront him all he likes, and there is no violation of the Sixth Amendment. *United States v. Mitchell*, 778 F.2d 1271, 1273 n. 1 (7th Cir.1985).

The Constitution to one side, however, hearsay is inadmissible in federal criminal trials unless within one of the exceptions enumerated in the Federal Rules of Evidence. This rule might seem to have the same practical effect as *Bruton*. But probably it does not. *United States v. Mitchell, supra*, 778 F.2d at 1273 n. 1, assumes that limiting instructions retain their potency when the only objection to the codefendant's (Neal's) confession is that it is inadmissible hearsay as to the other defendant (Myers). And since Neal's statement was admissible against Neal himself, the admission of the statement in his and Myers' joint trial cannot automatically be assumed to have been improper. On the contrary, we may assume that if severance was properly denied, if Neal's statement could not have been further edited to disguise the reference to Myers without becoming misleading or confusing, and if the jury had been instructed to consider the statement only in reference to Neal's guilt or innocence, Myers could not complain; the statement would not have been admitted against her.

None of these conditions was fulfilled, however. The jury was allowed to consider inadmissible, and very damaging, hearsay evidence in deciding whether Myers was guilty—indeed, the jury was invited to do so by the government's closing argument, as we shall see. The judge did instruct the jury to "leave[e] out of consideration any evidence admitted solely against the other defendant," but he did not tell the jury which evidence had been admitted solely against one defendant rather than against both. The responsibility for the jury's being allowed to consider Neal's statement against Myers was, it is true, partly her lawyer's. But if the admission of the evidence against her was a plain error, she is entitled to a new trial. Fed.R.Crim.P. 52(b). We need not decide whether the error by itself was plain, however, for we shall see that the question merges with the question whether her trial counsel represented her effectively.

Myers also complains about the admission of Siwy's testimony that he had identi-

fied her from a photograph. The police had interviewed Siwy right after the fire and he had given them a description of the woman—apparently an inaccurate one, as we shall see. And he had been unable to assist the police, later that morning, in making a composite drawing of the woman. Fourteen months later, Neal's counsel, in an effort to shift guilt from his client to Myers, appeared one night at the gas station and showed Siwy three photographs. Two were of Myers and the third of McBrayer. Siwy identified the photographs of Myers as photographs of the woman who had bought cigarettes from him on the night of the fire and had paid for the gas that her companion was pumping into the can, and he testified to this photographic identification at the trial. Denying that she was the woman, Myers testified that she had visited this gas station late at night on other occasions because it was one of the few all-night stores proximate to the bars she frequented. There was no evidence that McBrayer had ever gone there, so that if Myers' testimony about frequenting Siwy's station was believed, the photo array was highly suggestive indeed. In questioning Siwy at trial, the government neither asked him whether he recognized Myers in the courtroom nor asked him to identify her from the photo array, which was later placed in evidence. (Presumably he had told the government that he had forgotten what the woman looked like.) Neither did Myers' counsel ask Siwy on cross-examination whether he saw in the courtroom the woman whom he had identified from the photo array—no doubt fearing that, pressed, Siwy might put the finger on Myers after all. The government did ask Siwy whether he could identify Neal in the courtroom, and he did, although he had been unable to do so at Neal's state trial.

Myers argues that Siwy's identification of her should not have been admitted, because the requirements of a nonsuggestive photo lineup were not satisfied. As this is not a case where the government conducted the lineup—the government was not in the least implicated in the effort of Neal's counsel to get Siwy to identify Myers—one

might think the only question would be whether the suggestiveness of the lineup, the absence of safeguards, and the lapse of time since the night of the fire so impaired the reliability of the identification that it should have been excluded from the trial: compendiously, whether the probative value of the photo identification was substantially outweighed by the danger of prejudicial effect. Fed.R.Evid. 403. The cases, however, seem both uninterested in the source of the photo identification—whether governmental or private ("we need not consider the reprehensibility of police conduct in these cases except as it bears upon the reliability of the challenged identification," *United States v. Field*, 625 F.2d 862, 868 (9th Cir.1980); but cf. *Mata v. Sumner*, 611 F.2d 754, 759 (9th Cir.1979), vacated on other grounds, 449 U.S. 539, 101 S.Ct. 764, 66 L.Ed.2d 722 (1981))—and unwilling to assimilate lineup evidence to other evidence challenged under Rule 403. Instead they treat the question of admissibility as one of due process, *United States v. Falange*, 426 F.2d 930, 935 (2d Cir.1970), and ask whether "the photographic identification procedure was so impermissibly suggestive as to give rise to a very substantial likelihood of irreparable misidentification." *Simmons v. United States*, 390 U.S. 377, 384, 88 S.Ct. 967, 971, 19 L.Ed.2d 1247 (1968).

■ This approach may reflect the fact that the leading case—*Simmons*—predates the Federal Rules of Evidence. Or the fact that few cases have involved a private lineup, so that the lineup has seemed a police tactic, a thing apart from the routine gathering of evidence. Either way, courts rarely refer to Rule 403 in these cases, but instead treat the ultimate question as the reliability of the identification in the particular circumstances. Even when the procedure is suggestive—which it was here—the identification may be reliable, and if so the evidence comes in. *Manson v. Brathwaite*, 432 U.S. 98, 114, 97 S.Ct. 2243, 2253, 53 L.Ed.2d 140 (1977); *Love v. Young*, 781 F.2d 1307, 1310 (7th Cir.1986). And, just as in cases under Rule 403, the question of reliability is, partly because of its particularity, a judgment call for the district judge

and therefore is entitled to deferential appellate review—review not for error but for unreasonableness. *Dobbs v. Kemp*, 790 F.2d 1499, 1506 (1986), modified on other grounds, 809 F.2d 750 (11th Cir.1987).

█ Although the question is a close one, we do not think Judge Moody was unreasonable in allowing in the evidence of the identification. If Siwy's testimony was believed, the behavior of the woman on the night of the fire was sufficiently furtive to rivet his attention. The couple remained in their car for five minutes after arriving at the gas station, which worried Siwy because it was after 3 a.m. In combination with the fact that the woman when buying the cigarettes and paying for the gas avoided eye contact, the delay in leaving the car made Siwy fear that the pair were going to rob him. The incident became all the more memorable when the police showed up a few hours later to ask Siwy whether anyone had bought a can of gasoline earlier that night.

Against these indicators of reliability is the fact that to show an eyewitness two pictures of the same person, out of only three pictures in toto, would naturally steer the witness toward that person. *Dobbs v. Kemp, supra,* 790 F.2d at 1506. And there is the further fact that Myers (if one believed her testimony, but it was at least plausible) visited the gas station on other occasions. If so, Siwy was more likely to recall her, as someone he had indeed seen before though possibly on a different occasion, than to recall McBrayer whom he had never seen. However, the jury knew the circumstances in which the identification had been made and could appraise its probative value as well as we, bearing in mind Siwy's failure to identify Myers in the courtroom (but the trial occurred three years after he had identified her from the photos). Cf. *United States v. Falange, supra,* 426 F.2d at 935. Or so at least the trial judge, with his first-hand impressions of the jury and the witnesses, was entitled to conclude.

█ Myers' last argument is that she lacked effective assistance of counsel. Kinney was retained counsel at trial (this court appointed him to represent her on appeal—with what result will appear shortly) and is an experienced member of the Indiana trial bar, but the showing of ineffective assistance is powerful. First (but least), his failure to seek a severance is difficult to understand. Although severances are rarely granted in conspiracy cases, this case was unusual because a severance would have been a natural way to solve the problem presented by Neal's statement. Natural, but not inevitable; and in light of the Supreme Court's disapproval in *Richardson v. Marsh* of severance as a solvent for *Bruton* problems, 481 U.S. at 209–10, 107 S.Ct. at 1708, we cannot say that Kinney's failure to seek a severance had a material impact on the proceedings. But cf. *United States v. Sherlock,* 865 F.2d 1069, 1080–81 (9th Cir.1989).

While not seeking a severance, Kinney did ask the judge to further edit McBrayer's statement to eliminate the reference to "another person." In combination with the remark of the fingerprint expert that McBrayer had implicated Myers and with the fact that McBrayer testified to seeing Myers with Neal on the night of the fire, the reference pointed the jury unerringly to Myers. Kinney cannot be blamed for the judge's having refused to delete all reference to another person. Kinney asked for the deletion, which was all he could do—and was properly refused. We and other courts have held that the replacement of the defendant's name with "another person," the course followed here, is sufficient compliance with *Bruton,* and, we may assume, with the hearsay rule as well. *United States v. Holleman,* 575 F.2d 139, 143 (7th Cir.1978); *United States v. Madison,* 689 F.2d 1300, 1309 (7th Cir.1982); *United States v. Alvarado,* 882 F.2d 645, 652–53 (2d Cir.1989); *United States v. Vasquez,* 874 F.2d 1515, 1518 (11th Cir.1989) (per curiam); but cf. *United States v. Soriano,* 880 F.2d 192, 197 (9th Cir.1989) (dictum). Deleting all reference to another person would have made Neal's statement confusing, in light of the evidence that he did not act alone. Perhaps in some cases the reference could be deleted without confusion,

and if so that might be the better course; it would not have been here.

The only serious default by Kinney concerning Neal's out-of-court statement—but it *was* serious—was the failure to submit a limiting instruction that would tell the jury to consider the statement only in relation to Neal's guilt or innocence. The government speculates that Kinney did not submit the instruction, though invited to do so by the district judge, because it would just have drawn attention to the incriminating character of the statement. This speculation does not help the government's case. If a cautionary instruction would be ineffectual, this strengthens the case either for a more thorough editing of the statement, or for a severance, which would have resulted in a separate trial of Myers in which Neal's statement would not have been admissible at all.

*Richardson* speaks much more kindly about cautionary instructions than does *Bruton,* 481 U.S. at 206–07, 211, 107 S.Ct. at 1706–07, 1709, albeit in the context of a codefendant's confession that had been edited to eliminate all reference to the defendant rather than just to delete the defendant's name. The Court in *Richardson* reasoned as follows: If the confession is incriminating on its face, the jury on hearing it may form an indelible impression of the defendant's guilt, "whereas with regard to inferential incrimination the judge's instruction may well be successful in dissuading the jury from entering onto the path of inference in the first place, so that there is no incrimination to forget." *Id.* at 208, 107 S.Ct. at 1707. The distinction will strike some as oversubtle—and legal realists may think it presages the overruling, explicit or implicit, of *Bruton*—but we are bound to take seriously the Court's expressed view that in a case such as the present, careful editing *and* a limiting instruction do make a difference. It is true that the editing was more drastic in *Richardson* than in the present case; there was no reference to "another person." The Court reserved the question whether a limiting instruction would be adequate in an "another person" case. 481 U.S. at 211 n. 5, 107 S.Ct. at 1709 n. 5. But the logic of the decision compels an affirmative answer to the reserved question. The Court said that the reason the limiting instruction failed in *Bruton* was that the confession *named* the defendant and the naming dazzled the jury and prevented it from taking seriously the limiting instruction. In *Richardson* and in the present case the dazzle is absent because the confession itself does not on first reading implicate the defendant—it is only later, when other evidence comes in, that the confession is seen to contain an implicit reference to the defendant.

Kinney apparently failed in another important respect to provide Myers with minimally competent representation. This relates to Siwy's testimony. The government had sent Kinney a letter before trial listing *Brady* material (exculpatory material in the government's possession). Among the items listed was a police report that is not a part of the record but that, according to Myers' present counsel, contains a description given by Siwy the night of the fire that is sharply at variance with Myers' actual appearance. In the report, according to counsel, Siwy describes the woman as dark, heavy-set, and in her thirties; at the time of the fire Myers was tall, light-haired, and 25 years old. Police reports are frequently inaccurate, and estimates of age notably imprecise, but the erroneous description ascribed to Siwy by the report could have been used effectively in cross-examining him. Apparently Kinney never bothered to read the report.

We keep saying "apparently" because Kinney has not testified regarding his representation of Myers. Kinney has been completely uncooperative in furnishing Myers' new appellate counsel with documents that he needed for the appeal and has refused even to discuss the case with him. Indeed, so lax was Kinney's representation of Myers on appeal that a panel of this court ordered him discharged as her court-appointed appellate counsel—and disbarred from this court, into the bargain. *United States v. Myers,* No. 88–2349 (7th Cir. June 16, 1989) (unpublished).

We have no confidence that Myers received the minimally professional representation to which the Constitution entitled her. A failure to read documents, not voluminous, that the government has disclosed pursuant to its duty to reveal potentially exculpatory materials is a sure sign of professional incompetence and so, in the circumstances, was the failure to submit an instruction designed to limit the impact of Neal's statement on Myers' trial. Nor can Kinney's failures in these two respects be overlooked on the ground that they probably did not affect the outcome of the trial, *Strickland v. Washington*, 466 U.S. 668, 694, 104 S.Ct. 2052, 2068, 80 L.Ed.2d 674 (1984), because probably they did. Neal's statement was the most damaging evidence against Myers. The prosecutor recognized this when in closing argument, after mentioning Myers and noting that McBrayer had testified that Neal had told her (this was the heart of Neal's statement) that he and a friend had set fire to the car, he asked rhetorically, " 'Who's the good friend?' " The second most damaging piece of evidence was Siwy's identification, and it could have been greatly undermined by a police report indicating that Siwy had described a different person on the night of the fire, fourteen months before his photo identification. Indeed, so doubtful was the reliability of the identification in any event that knowledge of the police report might have led the district judge to bar Siwy's testimony altogether. The other evidence against Myers—principally, that she tried to get McBrayer to throw the police off the scent—was not enough to establish her guilt beyond a reasonable doubt. Even innocent people may panic at a police investigation and try to lie their way to safety.

Our conclusion that Myers was deprived of her right to effective assistance of counsel must remain tentative because Kinney has not been heard from. We therefore vacate the judgment of conviction and remand the case for an evidentiary hearing on Myers' claim of ineffective assistance. Ordinarily a claim of ineffective assistance of counsel that depends on evidence outside the trial record can be made only by motion under 28 U.S.C. § 2255 to vacate the conviction and sentence. Certainly a defendant cannot obtain an automatic remand on direct appeal of his conviction by submitting to this court evidence outside the record that he was incompetently represented at trial. This case is unusual because the trial record itself compels a strong although not conclusive inference of ineffective representation—so strong that Myers' conviction should not be allowed to become final until the issue is resolved.

If on remand the district court upholds the claim of ineffective assistance of counsel, Myers will be entitled to a new trial. Should the court decide to reinstate the judgment of conviction, she will be entitled to appeal that determination, and on that appeal we shall if need be decide whether the failure to give a limiting instruction regarding Neal's statement was plain error by itself—a difficult question. Pending the further proceedings on remand, she shall remain at liberty pursuant to the order we issued after hearing the argument of the appeal. 18 U.S.C. § 3143(b).

Vacated, and Remanded with Directions.