**UNITED STATES of America, Plaintiff–Appellee,**

v.

**Kellie J. MYERS, Defendant–Appellant.**

**No. 90–2224.**

United States Court of Appeals, Seventh Circuit.

Argued Oct. 22, 1990.

Decided Nov. 6, 1990.

conviction and remand for a detailed inquiry into the constitutional adequacy of the defense he provided. 892 F.2d 642 (7th Cir.1990). The district judge took evidence from Kinney and concluded that he made reasoned, tactical decisions. These did not turn out well (no convicted defendant receives effective assistance if the desired effect is acquittal), but shortcomings did not fall below professional standards. See *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). The district judge wrote a careful, 25–page explanation of his conclusions, considering Myers' objections point-by-point.

Although Myers' vigorous appellate counsel identifies nine deficiencies in Kinney's work, two dominate. The first is a contention that Kinney should have moved to sever Myers' trial from that of Randall Neal. The other is the argument that Kinney should have asked for an instruction reminding the jury not to hold against Myers an oblique reference to "another person" in a statement Neal made. Because our earlier opinion sets out the facts, we can be brief.

■ Both Myers and Neal offered alibis. They had been together smoking and drinking the evening of October 4, 1984, and until 1:30 a.m. on October 5, they conceded, but they said they parted ways at 1:30 and did not participate in the torching that occurred 2½ hours later. The rub is that Neal had to explain away a beer can and a cigarette package, bearing his fingerprints, found near the crime. He did this by testifying that he had fetched beer for Myers, implying that if she dropped the can it was understandable that it had his prints, even though he played no role in the crime. Myers insists that a severance would have protected her from this implication.

■ Although the evidence was adverse to Myers, the defenses were not mutually exclusive. See *United States v. Buljubasic*, 808 F.2d 1260, 1263–64 (7th Cir.1987); *United States v. Turk*, 870 F.2d 1304, 1306 (7th Cir.1989). We remarked in *Buljubasic* on the strong interest in joint trials and

Lisa J. Stark, Dept. of Justice, Tax Div., Washington, D.C., Gwenn R. Rinkenberger, Asst. U.S. Atty., Office of U.S. Atty., Hammond, Ind., Daniel P. Butler, Gerrard Hogan, Dept. of Justice, Civ. Div., Appellate Section, Washington, D.C., for plaintiff-appellee.

F. Allen Tew, Jr., Indianapolis, Ind., for defendant-appellant.

Before BAUER, Chief Judge, EASTERBROOK, Circuit Judge, and WILL, Senior District Judge.[*]

EASTERBROOK, Circuit Judge.

Kellie Myers was convicted of conspiring to firebomb the car of a black family of her neighborhood, depriving them of their civil rights in violation of 18 U.S.C. § 241. Doubts about the work of Martin H. Kinney, her lawyer at trial, led us to vacate the

---

[*] Hon. Hubert L. Will, of the Northern District of Illinois, sitting by designation.

observed that "[f]inger-pointing is an acceptable cost of the joint trial and at times is even beneficial because it helps complete the picture before the trier of fact." 808 F.2d at 1263. So a motion for severance would have had dim prospects. Kinney explained, moreover, that he would not have made the motion even if it were sure to be granted—*especially* not then. Neal's testimony that he gave the beer to Myers was evidence against her. Kinney reasoned that his best shot to keep the jury from learning this was to participate in a joint trial and hope that Neal would elect to stay off the stand. Kinney told the district court that he feared that, if the cases were severed, Neal would be tried first, convicted, given immunity, and called by the prosecution to testify against Myers—leading not only to this evidence but also to any other tidbits Neal may have had, perhaps even eyewitness testimony about the planning and execution of the firebombing. The district court thought this sound, writing that the "testimony Myers apparently considers to be 'antagonistic' would in all likelihood have been brought out by the government in a separate trial, but there was a chance of it being unavailable in a joint trial." Such findings about historical facts and the probable outcome under different strategies are reviewed deferentially, even though legal conclusions are reviewed de novo. *United States v. Olson,* 846 F.2d 1103, 1107 (7th Cir.1988); *Sullivan v. Fairman,* 819 F.2d 1382, 1393 (7th Cir.1987). The district court characterized Kinney's decision as "sound", and under *Strickland* an attorney's strategic choice is "virtually unchallengeable", 466 U.S. at 690, 104 S.Ct. at 2066.

■ Myers' most substantial contention is that Kinney should have asked the court to give an instruction reminding the jury not to infer anything from a mysterious reference in one of Neal's statements. A few days after the arson, Neal told Meg McBrayer that he and Myers committed the crime together because Myers' parents were concerned that the presence of a black family would depress property values in the neighborhood. McBrayer relayed that statement to the jury, discreetly replacing Myers' name with "another person" but including the reference to property values. This cured any hearsay problem. There was no problem under the confrontation clause because Neal, the declarant, testified, 892 F.2d at 644, and anyway the prosecution may use euphemisms to avoid that clause. *Richardson v. Marsh,* 481 U.S. 200, 107 S.Ct. 1702, 95 L.Ed.2d 176 (1987). Nonetheless, there was a significant risk that the jury would use the veiled reference to "another person" as substantive evidence against Myers, the only "other person" within sight—one whose mother testified that she had put the family house on the market three times without receiving an acceptable offer. To strengthen the link, an FBI agent testified that he had sent Myers' fingerprints to headquarters for analysis after McBrayer named Myers as one of the offenders.

Although this evidence might have been the basis of an argument for severance, the district court concluded in light of *Richardson* that separate trials were not in the cards. *Richardson* allows the use of veiled references in joint trials even when the declarant does not testify; the judge thought the case for joint trial stronger when the declarant takes the stand. The trial judge best knows what would have happened had severance been requested, and the omission of a request for a boon that would not have been forthcoming (if indeed severance would have been a boon, in light of the chance that Neal would have turned up as a witness for the prosecution) is not ineffective assistance.

That leaves Kinney's failure to seek a cautionary instruction, which may do more harm than good. You can't instruct "Do not draw inference *X*" without informing the jurors that *X* is one possible conclusion from the evidence. To tell the jurors not to do something is to ensure that they will do it, at least for a while. (Imagine what happens if a judge intones: "For the next two hours, do not say the word 'hippopotamus' to yourself.") Such an instruction still may be beneficial, for it will arm conscientious jurors with knowledge about their proper roles, and an argument to de-

ploy in the jury room if the subject arises. But reasonable persons may differ about whether the good such an instruction does with a thoughtful juror will outweigh the harm it can do by fastening attention on a link that may have been overlooked or forgotten. *Lakeside v. Oregon,* 435 U.S. 333, 339–40, 98 S.Ct. 1091, 1094–95, 55 L.Ed.2d 319 (1978). Judge Moody concluded that Kinney thought about the pros and cons of the instruction, discussed the subject with co-counsel, and concluded that the jurors probably would not treat Myers as the "other person" in McBrayer's testimony, thinking it a direct quote from Neal. If Neal said "another person" to McBrayer, who knew both Neal and Myers, then (the defense might believe) the jurors could infer that Neal was referring to someone McBrayer did not know. A caution from the judge then would be worse than ineffective. Counsels' conclusion, the district judge believed, was reasoned and reasonable. Cf. *Willis v. Kemp,* 838 F.2d 1510, 1519–20 n. 19 (11th Cir.1988); *United States v. Feroni,* 655 F.2d 707, 712 (6th Cir.1981). Kinney fought to keep out of evidence all reference to the "other person"; after failing in the principal objective, he thought it best to cut the losses. Under the approach of *Strickland,* such a decision is not ineffective assistance.

None of Myers' remaining arguments requires separate discussion. Our first opinion expressed concern, for example, that Kinney had failed to challenge an identification that was "sharply at variance with Myers' actual appearance." 892 F.2d at 648. It turned out that Myers told Kinney before trial that at the time of the crime her appearance was similar to the description this witness furnished of the offender, but that this had changed in the intervening years.

Kinney will not be admitted to the American College of Trial Lawyers any time soon (his performance in *this* court was so bad that we disbarred him), but having decided that his best chance of keeping Neal off the stand lay in a joint trial—a joint trial that was almost sure to come his way even if he had tried to engineer a separate one—Kinney was hard pressed to deal with Neal's statement to McBrayer. He made a plausible decision; even in retrospect the district judge doubted that a different decision would have been superior. Other aspects of Kinney's work can be questioned, but none creates serious doubt about the quality of the trial and verdict.

A_FFIRMED._